$400 MAK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-----------------------------------------------------------------X
PENELOPE KONTOULIS,

                              Plaintiff,

ENCLARA PHARMACIA, INC.; and DIANE
PERRYMORE, *individually*,

                              Defendants.
-----------------------------------------------------------------X

Civil Action No.

18CV3864

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff, PENELOPE KONTOULIS, as and for her Complaint against the above Defendants respectfully alleges upon information and belief as follows:

FILED
SEP 10 2018
KATE BARKMAN, Clerk
By _____ Dep. Clerk

## NATURE OF THE CASE

1. Plaintiff complains pursuant the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA")[1] and the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq.* ("FMLA") seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her association with her disabled son, subjected to a hostile work environment on the basis of the same, and retaliated against by her employer for complaining of the harassment and discrimination and for exercising her rights under the Family and Medical Leave Act.

## JURISDICTION AND VENUE

---

[1] As Plaintiff's related claims under the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO") are not yet ripe, Plaintiff reserves the right to amend her Complaint to include those causes of action once they are available to her.

2. This action involves Questions of Federal Law under the Americans with Disabilities Act of 1990 and the Family and Medical Leave Act of 1993. This court has supplemental jurisdiction over the State and City causes of action.

3. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the County of Philadelphia, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events in issue took place in Philadelphia County, Pennsylvania within the Eastern District of Pennsylvania.

4. On or about September 26, 2017, Plaintiff dual-filed charges with the EEOC and PHRC against Defendants as set forth herein.

5. On or about June 13, 2018, the Equal Employment Opportunity Commission issued Plaintiff her Notice of Right to Sue.

6. This action is being commenced within 90 days of receipt of the EEOC Right to Sue Letter.

**PARTIES**

7. Plaintiff PENELOPE KONTOULIS (hereinafter referred to as "Plaintiff" and "KONTOULIS") is an individual female who is a resident of the State of New Jersey.

8. At all times material, Defendant ENCLARA PHARMACIA, INC. (hereinafter referred to as "Defendant" or "ENCLARA") was and is a foreign business corporation organized and existing under the laws of the State of Delaware and licensed to do business within the Commonwealth of Pennsylvania.

9. At all times material, Defendant ENCLARA operated an office located at 1601 Cherry Street, Suite 1700, Philadelphia, PA 19102.

10. At all times material, Defendant DIANE PERRYMORE (hereinafter referred to as "PERRYMORE") was an employee of Defendant ENCLARA.

11. At all times material Defendant PERRYMORE was employed as Vice President of Human Resources by Defendant ENCLARA.

12. At all times material, Defendant PERRYMORE held supervisory authority over Plaintiff.

## MATERIAL FACTS

13. Around May 31, 2016, Plaintiff began working for Defendant ENCLARA as a Payroll Manager.

14. Plaintiff is the sole caretaker of her adult son, I.S., who has "Fragile X" syndrome and is on the autism spectrum.

15. According to the National Fragile X Foundation, "Fragile X syndrome (FXS) is a genetic condition that causes intellectual disability, behavioral and learning challenges and various physical characteristics. Though FXS occurs in both genders, males are more frequently affected than females, and generally with greater severity."

16. At all times material, Defendants were aware that I.S. was disabled and that Plaintiff was his sole caretaker.

17. Around April 2017, Plaintiff requested an accommodation from Defendants in the form of working from home two (2) days per week so that she could care for her son. However, Defendants denied the request.

18. In response, Plaintiff again renewed her request. On this occasion, Defendants partially granted the request, allowing Plaintiff to work from home one (1) day per week, but

informed Plaintiff that she was not permitted to request any further accommodations regarding her schedule.

19. Upon information and belief, other similarly-situated employees who were not caretakers of disabled children were not restricted from working from home when they made such requests.

20. Around June 26, 2017, Plaintiff requested (both verbally and in writing) a temporary schedule adjustment in the form of arriving to and leaving from work two (2) hours earlier from normal for two (2) weeks so that her son could attend a camp for persons with disabilities.

21. In response, Defendant PERRYMORE denied Plaintiff's request, and stated that "I don't care about your son's disability." Defendant PERRYMORE further stated that "Maybe this job just isn't for you."

22. Plaintiff was shocked and highly offended by Defendant PERRYMORE's discriminatory remarks and actions regarding her son, but did not respond angrily out of fear that her job could be jeopardized.

23. Accordingly, after consulting Alison Butler (hereinafter referred to as "Butler"), Defendant's Benefits Manager, Plaintiff then filed for leave under the Family and Medical Leave Act ("FMLA"), and was subsequently approved for intermittent leave to take care of I.S.

24. During the conversation with Butler, Butler told Plaintiff that she would not notify PERRYMORE until after Plaintiff had been approved for FMLA, because she "knew for certain" that PERRYMORE would interfere with the application.

25. Around July 19, 2017, after Plaintiff was approved for FMLA, Defendant PERRYMORE learned of the approval from Butler. When PERRYMORE heard this, she angrily stated: "Why did she [Plaintiff] apply for FMLA?" and "How is that going to work?" In response, Butler informed PERRYMORE that other employees commonly used FMLA time and were permitted to do so.

26. In response to Butler's statement, PERRYMORE stated to her that "we can't let her [Plaintiff] do that."

27. PERRYMORE clearly singled out and treated Plaintiff differently than other similarly-situated employees solely based on Plaintiff's son's disabilities.

28. Later that day, Respondent amended their Paid Time Off ("PTO") policy to require that all "exempt" employees (which included Plaintiff) use PTO time when out on FMLA.

29. Defendants amended this policy in direct retaliation for Plaintiff exercising her rights and opposing Defendants' discriminatory conduct and comments.

30. Defendants ENCLARA and PERRYMORE clearly singled out and treated Plaintiff differently than other similarly-situated employees solely based on Plaintiff's son's disabilities. Other similarly-situated exempt employees who did not have disabled children were not singled out and harassed for using FMLA leave.

31. Around August 2, 2017, Plaintiff used her FMLA leave for the first time to take a day off to care for her son. Consistent with ENCLARA's practices, Butler sent out an email notifying employees in Plaintiff's department that Plaintiff would be out that day as a result of her FMLA leave.

32. Around the same time, Plaintiff overheard PERRYMORE in Butler's office loudly complaining to Butler about Plaintiff's leave. PERRYMORE stated that Plaintiff taking

FMLA was "ridiculous" and further stated that "What is she [Plaintiff] taking FMLA for, job protection? She's going to lose her job."

33. Once again, PERRYMORE discriminated against Plaintiff by threatening her job in retaliation for Plaintiff taking time off to care for her disabled son.

34. PERRYMORE continued her harassing and discriminatory actions, demanding that Butler provide her with "proof" of Plaintiff's FMLA leave.

35. Around that same time, Butler came to Plaintiff and warned her that PERRYMORE was attempting to find a reason to terminate her. Specifically, Butler warned Plaintiff that she had a "bullseye" on her back.

36. Around August 3, 2017, Plaintiff noticed that ENCLARA's Information Technology department employees were spending significant time in and around her office, but was not told why when she asked. Additionally, another of Defendants' employees, Christina Altomare, repeatedly attempted to obtain Plaintiff's login and password for Plaintiff's computer system without revealing her reasons for so doing.

37. Furthermore, around the same time, Plaintiff overheard PERRYMORE blatantly discriminate against her, brazenly stating "Why does she [Plaintiff] think the company should accommodate her for her son's disability?"

38. Around this time, Plaintiff sent an email and Calendar Invitation titled "Grievances" to Paul Williams (hereinafter "Williams"), ENCLARA's Director of Human Resources, to set up a meeting with him to address the ongoing discrimination and harassment in accordance with ENCLARA's policy regarding complaints of discrimination and harassment. In that email, Plaintiff outlined the harassment she was experiencing.

39. On or around August 4, 2017, Scott Baach (hereinafter "Baach"), the head of ENCLARA's legal department, began asking Plaintiff about whether she had ever sent an email regarding the wage garnishment of a former employee. In response, Plaintiff provided Baach with proof that she had sent the email. However, Baach continued to badger Plaintiff via email about the employee in question, and later that day, sent Plaintiff another email that stated "I was digging through my emails and I found this one that I had sent to you; did you ever get that?"

40. Later that same day, PERRYMORE came into Plaintiff's office and started yelling at Plaintiff about whether she had replied to Baach's email.

41. Defendants' sudden harassment of Plaintiff regarding old emails was an overwhelmingly transparent attempt to fabricate issues with Plaintiff's work performance in further retaliation for Plaintiff's exercise of her legal rights and opposition to the ongoing harassment and discrimination.

42. Around August 9, 2017, Plaintiff met with Williams to discuss the ongoing harassment and retaliation. During that meeting, Williams was dismissive of Plaintiff's report, stating "You can take it to Scott if you want." Curiously, also during that meeting, Williams stated "Oh my God, I hope my calendar isn't shared." Williams then deleted Plaintiff's calendar invite titled "Grievances" from his calendar.

43. Plaintiff's meeting with Williams ended around 11:30 AM. Later that *very same day*, Plaintiff was called into a conference room with PERRYMORE and ENCLARA's Director of Finance.

44. During that meeting, Defendants informed Plaintiff that she was being terminated for three reasons: (1) that she had allegedly deleted an email several months ago; (2) that she

generally had "poor performance"; and (3) that she had allegedly changed her payroll grade in ENCLARA's ADP payroll software

45. All three of Defendants' stated reasons were clearly pretexts for Plaintiff's retaliatory and discriminatory termination. Regarding the allegedly deleted email, Plaintiff had never been informed of any such issues with the email, and was only informed of sudden issues with it several months later after she had complained of discrimination. Regarding Plaintiff's "poor performance", Plaintiff was actually a very high performer for ENCLARA, even receiving a "Merit Award" and corresponding salary increase as a result of her exemplary performance. Prior to Defendants' post-termination allegations, Plaintiff had never heard any concerns about her work performance. Finally, the alleged change in Plaintiff's pay grade simply did not happen. Plaintiff was not even *able* to change her pay grade on her own, as all such changes needed to be approved by Altomare, ENCLARA's Director of Accounting.

46. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

47. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

48. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendants.

49. The above are just some examples, of some of the discrimination and harassment to which Defendants subjected Plaintiff.

50. Defendants have exhibited a pattern and practice of not only tolerating discrimination and retaliation, but also failing to investigate and cure the wrong once it has been reported.

51. Plaintiff claims alternatively (in the event Defendant claims so or the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law for Independent Contractors.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE
### AMERICANS WITH DISABILITIES ACT

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

53. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter I, § 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. (b): As used in subsection (a), the term 'discriminate against a qualified individual on the basis of disability' includes—(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

54. Defendants engaged in an unlawful discriminatory practice by discriminating against and harassing Plaintiff because of her association with her disabled son.

55. As such, Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

57. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter IV, § 12203, states: "(a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

58. Defendants engaged in an unlawful discriminatory practice by discriminating against and retaliating against Plaintiff because of Plaintiff's opposition to Defendants' unlawful employment practices.

59. As such, Plaintiff has been damaged as set forth herein.

### AS A THIRD CAUSE OF ACTION FOR INTERFERENCE UNDER THE FAMILY AND MEDICAL LEAVE ACT

60. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

61. Title 29 of the Family and Medical Leave Act of 1993, Chapter 28, Subchapter I, § 2615 states as follows: "Prohibited Acts: (a) Interference with Rights (1) Exercise of Rights: It

shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subchapter.

62. Defendants interfered with Plaintiff's rights under the above section of the FMLA.

63. As such, Plaintiff has been damaged as set forth herein.

### AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. Title 29 of the Family and Medical Leave Act of 1993, Chapter 28, Subchapter I, § 2615 states as follows: "Prohibited Acts: (a) Interference with Rights (2) Discrimination: It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

66. Defendants unlawfully discriminated against and harassed Plaintiff in retaliation for her exercise of rights under the FMLA.

67. As such, Plaintiff has been damaged as set forth herein.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

FILED
SEP 10 2018
KATE BARKMAN, Clerk
By _____ Dep. Clerk

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
September 6, 2018

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

By: _____
Nathaniel N. Peckham, Esq.
1845 Walnut Street, Suite 1601
Philadelphia, Pennsylvania 19103
Tel. (215) 391-4790
nathaniel@dereksmithlaw.com